IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15CV00052 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| JOE WATSON, ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Caroline D. Ciraolo, Principal Deputy Attorney General, and Nelson Wagner, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for United States; Kenneth R. Russell, Jr., and Mary F. Russell, Russell Law Firm, Bristol, Virginia, for Defendants.*

The United States instituted this action against defendants Joe Watson and his wife Betty Watson to collect federal payroll tax assessments. I previously entered summary judgment in favor of the United States on Count I of the Complaint, reducing to judgment the tax assessments made against Joe Watson. *United States v. Watson*, No. 1:15CV00052, 2016 WL 5922317 (W.D. Va. Oct. 11, 2016). The United States now moves for summary judgment on Count II, which seeks to foreclose federal tax liens against real property owned by Watson and his wife. For the reasons that follow, I will grant the Motion for Summary Judgment.

I.

The facts underlying the tax assessment are summarized in my earlier opinion, and I will not repeat them here. Joe and Betty Watson own two commercial properties as tenants by the entirety. The first property is located at 205-209 Piedmont Avenue, Bristol, Virginia, and the second property is located at 1385 Lee Highway, Bristol, Virginia (collectively, "Properties"). Aside from the tax liens at issue in this case, no other liens or judgments attach to either of the Properties. The United States seeks to sell the Properties at a public auction in accordance with 28 U.S.C. §§ 2001-02, and to pay one half of the sale proceeds to Betty Watson, retaining the other half of the proceeds to satisfy the judgment against Joe Watson. Should any funds remain after satisfaction of the judgment, the remaining proceeds would be transmitted to Joe Watson.

Betty Watson is 77 years old and has been a housewife for most of her 59-year marriage to Joe Watson. The Watsons receive approximately $1,988 per month in Social Security benefits. They own their residence. Betty Watson has declared that this monthly Social Security income is about $1,500 to $2,000 less than what is needed to cover the couple's monthly expenses.

Both of the Properties are currently rented. The Properties are managed by the couple's son-in-law, who has in the past used the rental profits to purchase cars for the Watsons and otherwise provide for their needs. Betty Watson's car is a

2003 model and will soon need to be replaced. The Watsons' residence needs a new roof and ceiling repairs. The garage roof is collapsing; the concrete walls of the enclosed porch are crumbling, causing leaks; and the exterior trim is rotting. Betty Watson estimates that the cost of necessary repairs would be $75,000 to $150,000. She has not proffered any contractor quotes or expert report to support this estimate.

Betty Watson has declared that the rental proceeds from the Properties would be the only income available to replace the couple's cars, repair the residence, cover their monthly income shortfall, and address any emergency that may arise. She does not believe a foreclosure sale would produce adequate funds to sustain her and her husband for the remainder of their lives. Joe Watson's health is less than perfect, and if he predeceases his wife, she will lose the benefit of his monthly Social Security income.

Betty Watson has submitted a declaration of Bart Long, a real estate agent who has worked in the Bristol, Virginia, area for more than twenty years. According to Long, the real estate market in the area has been slow to recover from the 2008 market downturn, and the Properties, which are not located in growing commercial areas, have few uses. In his experience, court-ordered sales of real estate generate significantly lower sales prices than voluntary sales. Long opines that the Properties are unlikely to sell for their tax-assessed values and might not

even generate half of their tax-assessed values. The property located on Piedmont Avenue is under a month-to-month lease, and the lack of a long-term lease could negatively impact the sales price of that property.

Based on this evidence, Betty Watson asks the court to deny the Motion for Summary Judgment and proceed to a trial on the merits to determine whether a forced sale of the Properties would pose an undue hardship to her. The Motion for Summary Judgment has been fully briefed and is ripe for decision.[1]

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmovant "is entitled, as on a motion for directed verdict, to have the credibility of his evidence as forecast assumed, his version of all that is disputed accepted, all internal conflicts in it resolved favorably to him; the most favorable of alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered," regardless of the allocation of the burden of proof at trial. *O'Connor v. United States*, 956 F.2d 48, 50 (4th Cir. 1992) (internal quotation marks and citations omitted).

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not significantly aid the decisional process.

When the United States has established a claim to a taxpayer's property due to failure to pay a tax liability, the court "may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale[ ] according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c).

In *United States v. Rodgers*, 461 U.S. 677, 680 (1983), the Supreme Court held that a district court has the power to order the sale of a family home to satisfy the tax debt of its owner, even when the debtor's spouse also owns an undivided interest in the home which is protected against forced sale under state law. The provisions of state law at issue in *Rodgers* "g[a]ve each spouse in a marriage a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs." *Id.* at 685. The Court held that this was "the sort of property interest for whose loss an innocent third-party must be compensated under § 7403." *Id.* at 698. But the Court concluded that "[w]hatever property rights attach to a homestead under Texas law are adequately discharged by the payment of compensation, and no further deference to state law is required, either by § 7403 or by the Constitution." *Id.* at 702.

The Court further found, however, that § 7403 allows for some discretion and "does not require a district court to authorize a forced sale under absolutely all

circumstances." *Id.* at 706. The Court enumerated a non-exclusive list of factors that might warrant a district court in exercising its limited discretion and declining to order a forced sale of the entire jointly-owned property. "First, a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes." *Id.* at 710. "Second, a court should consider whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Id.* at 710-11. "Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation . . . ." *Id.* at 711. "Fourth, a court should consider the relative character and value of the non-liable and liable interests held in the property . . . ." *Id.*

The United States contends that the *Rodgers* considerations apply only to homestead properties and not to commercial properties owned as tenants by the entirety. The Supreme Court's reasoning in *Rodgers* does not support such a limitation, and this court has not located any binding precedent holding that *Rodgers* is limited to residential properties. I will therefore consider the *Rodgers* factors.

- 6 -

Case 1:15-cv-00052-JPJ-PMS   Document 47   Filed 01/27/17   Page 6 of 10   Pageid#: 406

Virginia law recognizes the form of joint ownership called tenancy by the entirety, which "is a legal fiction based upon the same four unities that support joint tenancies plus a fifth unity of marriage." *Evans v. Evans*, 772 S.E.2d 576, 580 (Va. 2015) (internal quotation marks, alterations, and citations omitted). Ownership as tenants by the entirety comes with certain restrictions:

> First, during the marriage, neither spouse may make an absolute disposition of property held as tenants by the entirety by his or her sole act. Second, consistent with this restriction on alienability, no creditor of only one spouse can attach property held by both spouses as tenants by the entirety. Finally, so long as the property remains held by them as tenants by the entirety, upon the death of one spouse, ownership of the property will pass to the other in fee simple outside the estate of the deceased spouse.

*Id.* at 580 (internal quotation marks, and citations omitted.) Under Virginia law, Betty Watson has an expectation that her husband's creditors cannot force a sale of the Properties. Thus, the second *Rogers* factor weighs in her favor. Other factors, however, support the entry of judgment for the United States.

The Watsons do not reside in the Properties, so a sale of the Properties will not require them to relocate, nor will it cause a loss of sentimental value akin to the sale of a house where they raised their children. The Properties appear to generate little rental income beyond expenses. The United States notes that on an IRS form submitted under penalty of perjury, the Watsons did not identify any income from the Properties. Though Betty Watson has now declared that the properties produce income, she does not specify any amount. Nevertheless, the only example of rental

- 7 -

Case 1:15-cv-00052-JPJ-PMS   Document 47   Filed 01/27/17   Page 7 of 10   Pageid#: 407

Virginia law recognizes the form of joint ownership called tenancy by the entirety, which "is a legal fiction based upon the same four unities that support joint tenancies plus a fifth unity of marriage." *Evans v. Evans*, 772 S.E.2d 576, 580 (Va. 2015) (internal quotation marks, alterations, and citations omitted). Ownership as tenants by the entirety comes with certain restrictions:

> First, during the marriage, neither spouse may make an absolute disposition of property held as tenants by the entirety by his or her sole act. Second, consistent with this restriction on alienability, no creditor of only one spouse can attach property held by both spouses as tenants by the entirety. Finally, so long as the property remains held by them as tenants by the entirety, upon the death of one spouse, ownership of the property will pass to the other in fee simple outside the estate of the deceased spouse.

*Id.* at 580 (internal quotation marks, and citations omitted.) Under Virginia law, Betty Watson has an expectation that her husband's creditors cannot force a sale of the Properties. Thus, the second *Rogers* factor weighs in her favor. Other factors, however, support the entry of judgment for the United States.

The Watsons do not reside in the Properties, so a sale of the Properties will not require them to relocate, nor will it cause a loss of sentimental value akin to the sale of a house where they raised their children. The Properties appear to generate little rental income beyond expenses. The United States notes that on an IRS form submitted under penalty of perjury, the Watsons did not identify any income from the Properties. Though Betty Watson has now declared that the properties produce income, she does not specify any amount. Nevertheless, the only example of rental

proceeds she provides is the purchase of a car in 2003, approximately fourteen years ago. At least one of the Properties is leased month-to-month, meaning there would be no guarantee of future rental income even if the Properties were not sold.

If the court orders a sale of the property, "following the sale, the proceeds of the sale must be distributed according to the interests of the parties." *United States v. Thornton*, No. 87-2171, 1988 WL 97278, at *4 (4th Cir. Sept. 14, 1988) (unpublished). Betty Watson, to account for her one-half interest, will receive one half of the sale proceeds after costs. Based on the record evidence, using the conservative estimates proffered by Long, Mrs. Watson's portion of the proceeds will likely amount to at least $175,000 to $200,000, which she can then choose to re-invest or use to pay for home repairs, a replacement car, and other expenses. The undisputed facts do not show that a sale of the Properties will unduly harm Betty Watson.

The Watsons contend that the United States' long delay in enforcing its collection rights warrants denial of the Motion for Summary Judgment. The tax liabilities at issue were incurred in 2001 and assessed in 2003. The statute of limitations for collection actions is ten years. 26 U.S.C. § 6502(a). As the defendants concede, the statute of limitations is tolled while an offer in compromise is pending. *See United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003). The Watsons concede that, accounting for the tolled period during which

an offer in compromise and appeal of its rejection were pending, the United States commenced this action within the statute of limitations.

"It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *but see Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 278 (2d Cir. 2005) (recognizing that although laches traditionally does not apply to the United States, "this does not seem to be a *per se* rule"). Even if the laches defense were available to the defendants, I would not find its application appropriate here. The United States complied with the statute of limitations. According to the defendants' evidence, the Bristol, Virginia, real estate market has been suboptimal since 2008 and has improved somewhat, albeit slowly, in recent years. In other words, a sale of the Properties today would likely garner a greater sum than a sale of the property at some other point over the past eight years. From the time of the tax assessment in 2003 until today, more than thirteen years later, the defendants have had the benefit of continued ownership of the Properties and receipt of rental income while Joe Watson has owed large sums of money to the United States. The evidence does not support a conclusion that any delay in the commencement of this action has prejudiced the defendants.

The *Rodgers* decision makes clear that a decision not to order foreclosure is the exception rather than the rule, and the court's discretion is limited. *Rodgers*,

- 9 -

Case 1:15-cv-00052-JPJ-PMS   Document 47   Filed 01/27/17   Page 9 of 10   Pageid#: 409

461 U.S. at 709-10. The circumstances present here do not warrant the exercise of that limited discretion. The undisputed facts in this case demonstrate that the United States is entitled to enforce its judgment against Joe Watson by selling the Properties and remitting to Betty Watson one half of the sale proceeds after payment of costs.

III.

For the foregoing reasons, the United States' Motion for Summary Judgment as to Count II (ECF No. 36) is GRANTED.

It is so **ORDERED**.

ENTER: January 27, 2017

/s/ James P. Jones
United States District Judge

- 10 -

Case 1:15-cv-00052-JPJ-PMS   Document 47   Filed 01/27/17   Page 10 of 10   Pageid#: 410